IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| PAUL HOFFMEISTER, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. |
| | ) | |
| v. | ) | |
| | ) | Judge |
| QUAKER FUNDS, INC., | ) | |
| JEFFRY H. KING, SR., LAURIE KEYES, | ) | |
| and JUSTIN BRUNDAGE, | ) | Jury Trial Demanded |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

Plaintiff, Paul Hoffmeister, by and through his attorneys, Pedersen & Weinstein LLP, for his Complaint against Defendants, Quaker Funds, Inc., Jeffry H. King, Sr., Laurie Keyes, and Justin Brundage, states as follows:

## NATURE OF ACTION

1. Plaintiff brings this action to recover unpaid wages owed to him pursuant to the Fair Labor Standards Act, 29 U.S.C. §§ 201 et seq. ("FLSA"), the Illinois Wage Payment and Collection Act, 820 ILCS 115/1 et seq., ("IWPCA") and the Illinois Minimum Wage Law, 820 ILCS 105/1 et seq., ("IMWL"). Plaintiff also asserts a claim for breach of contract under Illinois law.

## JURISDICTION AND VENUE

2. Jurisdiction is based on 28 U.S.C. §§ 1331 and supplemental jurisdiction over Plaintiff's state law claims is based on 28 U.S.C. § 1367.

3. Venue is proper in the Northern District of Illinois pursuant to 28 U.S.C. § 1391(b) as all or part of the cause of action arose in the Northern District of Illinois.

**PARTIES**

4. Paul Hoffmeister ("Plaintiff") is a former employee of Quaker Funds, Inc. Plaintiff is a citizen of the state of Illinois and a resident of Cook County. Throughout his employment with Quaker Funds, Inc., Plaintiff worked in Illinois and was engaged in interstate commerce.

5. Defendant Quaker Funds, Inc. ("Quaker") is Plaintiff's former employer and serves as the investment adviser for certain funds within the Quaker Investment Trust. Quaker's annual business exceeds $500,000 and it is a covered enterprise under the FLSA.

6. Defendant Jeffry H. King, Sr. ("King") is the Chairman of the Board of Directors and Chief Executive Officer of Quaker. King acted directly or indirectly in the interest of Quaker in relation to Plaintiff and was personally involved in the unlawful conduct against Plaintiff, including knowingly permitting Quaker to violate federal and state wage laws, as well as the Illinois Wage Payment and Collection Act.

7. Defendant Laurie Keyes ("Keyes") is the Chief Financial Officer of Quaker. Keyes acted directly or indirectly in the interest of Quaker in relation to Plaintiff and was personally involved in the unlawful conduct against Plaintiff, including knowingly permitting Quaker to violate federal and state wage laws, as well as the Illinois Wage Payment and Collection Act.

8. Defendant Justin Brundage ("Brundage") is the President and Chief Operating Officer of Quaker. Brundage acted directly or indirectly in the interest of Quaker in relation to Plaintiff and was personally involved in the unlawful conduct against Plaintiff, including knowingly permitting Quaker to violate federal and state wage laws, as well as the Illinois Wage Payment and Collection Act.

## FACTUAL ALLEGATIONS

*Background*

9. Plaintiff began working for Quaker in August 2010 as a portfolio strategist and in or around November 2014 became a portfolio manager for one of the funds Quaker managed, the Quaker Event Arbitrage Fund (the "Fund"). In this role, Plaintiff and his co-portfolio manager Thomas Kirchner ("Kirchner") were responsible for the day-to-day management of the Fund.

10. Throughout his employment, Plaintiff discharged all duties assigned to him competently and enjoyed an excellent reputation with regard to the high quality of his work and his conscientious devotion to his job.

*Plaintiff's Employment Agreement With Quaker*

11. In August 2010, Quaker and Plaintiff entered into an Employment Agreement ("Agreement"). A copy of the August 19, 2010 Agreement signed by Plaintiff and Brundage on behalf of Quaker, is attached hereto as Exhibit A.

12. Among other terms, the Agreement set forth how Quaker would compensate Plaintiff for his work. More specifically, Quaker agreed to pay Plaintiff $4,000 per month, to be paid monthly, until the Fund attained $50 million in net assets. Upon reaching this benchmark, Quaker agreed to pay Plaintiff "0.15% annually of the average daily net assets of the [Quaker Event Arbitrage] Fund" which was to be "calculated and paid monthly." The Fund attained $50 million in net assets in or around 2012, so pursuant to the Agreement, Quaker began paying Plaintiff the 0.15%. Quaker complied with this agreement through March of 2016, when the Agreement was modified by the parties as detailed below.

13. Separately, in or around 2013 Plaintiff and his co-portfolio manager, Kirchner, who worked for Quaker under a different compensation plan, agreed that Kirchner would pay

Plaintiff – from Kirchner's own compensation / profit center – an additional $1,500 per year for each $1 million of assets under management ("AUM") above $60 million the Fund attained, until the Fund reached $100 million in AUM. Although Quaker facilitated these additional payments, this arrangement did not modify or replace the Agreement between Quaker and Plaintiff.

*Modification Of The Employment Agreement*

14. The August 2010 Agreement was modified in March 2016 when Quaker agreed to pay Plaintiff a new salary of $6,000 per month.

15. This new pay structure continued for nearly a year, until February 2017, when, despite the agreement and in violation of federal and state wage laws, Defendants stopped paying Plaintiff any wages for work he performed.

16. When Plaintiff raised his concerns about this in March 2017, Defendants did not dispute that Plaintiff had been working without compensation, but instead tried to justify withholding his pay based on the company's financial position. Working without pay was extremely difficult for Plaintiff and his family, but he believed Defendants would make it up to him, so he continued working through May 15, 2017 without receiving a paycheck.

17. Although Defendants reinstated Plaintiff's salary of $6,000 per month at the end of May 2017, they never compensated him for the three months he worked without pay.

18. From June to August 2017, Defendants continued to pay Plaintiff $6,000 per month per the modified agreement, but in September 2017, Defendants once again stopped paying him for work they know he performed. Specifically Plaintiff was not paid for the second half of September 2017.

*Defendants Failed To Pay Plaintiff A Minimum Wage*

19. Throughout Plaintiff's employment, all the work he performed was assigned by

Defendants and/or Defendants were aware of all work Plaintiff performed.

20. Nonetheless, Defendants deprived Plaintiff of wages to which he was entitled under the law. Defendants' unlawful conduct included failing to pay Plaintiff even a minimum wage for hours Defendants knew he worked.

21. More specifically, Defendants failed to pay Plaintiff for any hours he worked in at least the pay periods ending February 28, 2017; March 15, 2017; March 30, 2017; April 15, 2017; April 30, 2017, May 15, 2017, and September 30, 2017.

22. Defendants' conduct violated the FLSA and IMWL, both of which require employers to pay employees a minimum wage.

23. Defendants also violated the IWPCA law by failing to pay Plaintiff the salary Quaker agreed to pay him.

24. By their conduct, Defendants willfully violated the FLSA, IMWL and the IWPCA.

*Termination Of Plaintiff's Employment*

25. Although Defendants reinstituted Plaintiff's $6,000 monthly salary on October 15, 2017, and paid back wages earned between October 1 and October 15, this did not make up for the time he worked without pay. By failing to pay Plaintiff wages he is indisputably owed, Defendants effectively terminated his employment. Accordingly, Plaintiff's last day of employment was November 3, 2017.

*Plaintiff Suffered Damages*

26. Plaintiff has lost wages, compensation and benefits as a result of Defendants' unlawful conduct.

27. Plaintiff has also incurred attorneys' fees and costs as a result of Defendants'

unlawful conduct.

## COUNT I

### VIOLATION OF THE FAIR LABOR STANDARDS ACT

**Plaintiff v. All Defendants**

28. Plaintiff realleges paragraphs 1 through 27 and incorporates them by reference into Count I of this Complaint.

29. Quaker, King, Keyes and Brundage are employers under the FLSA pursuant to 29 U.S.C. § 203.

30. Defendants violated the FLSA by failing to pay Plaintiff a minimum wage in accordance with 29 U.S.C. §§ 206 et seq., as detailed in this Complaint.

31. Defendants' violations of the FLSA were willful and intentional. Defendants have not made a good faith effort to comply with the FLSA with respect to Plaintiff's compensation.

32. As a result of Defendants' unlawful acts, Plaintiff has been deprived of compensation in amounts to be determined at trial, and is entitled to recovery of such amounts, liquidated damages, prejudgment interest, attorneys' fees, costs and other compensation pursuant to 29 U.S.C. § 216(b).

## COUNT II

### VIOLATION OF ILLINOIS MINIMUM WAGE LAW

**Plaintiff v. All Defendants**

33. Plaintiff realleges paragraphs 1 through 32 and incorporates them by reference into Count II of this Complaint.

34. The IMWL requires employers to pay employees a minimum wage as set forth in

820 ILCS 105/1 et seq.

35. Plaintiff is an employee under the IMWL. 820 ILCS 105/3.

36. Quaker, King, Keyes and Brundage are employers under the IMWL, 820 ILCS 105/3.

37. Defendants willfully failed to pay Plaintiff a minimum wage for all work he performed in violation of the IMWL.

38. Due to Defendants' violations of the IMWL, pursuant to 820 ILCS 105/12, Plaintiff is entitled to recover from Defendants his wages, reasonable attorneys' fees and the costs of the action, pre-judgment and post-judgment interest, as well as damages of 2% of the amount of any underpayments for each month following the date of payment during which such underpayments remain unpaid.

## COUNT III

### VIOLATION OF ILLINOIS WAGE PAYMENT AND COLLECTION ACT

### Plaintiff v. All Defendants

39. Plaintiff realleges paragraphs 1 through 38 and incorporates them by reference into Count III of this Complaint.

40. Plaintiff is an employee as defined under IWPCA, 820 ILCS 115/2.

41. Quaker, King, Keyes and Brundage are employers under IWPCA, 820 ILCS 115/2.

42. The IWPCA, 820 ILCS 115/2, defines "wages" to be "any compensation owed an employee by an employer pursuant to an employment contract or agreement between the 2 parties, whether the amount is determined on a time, task, piece, or any other basis of calculation."

43. The IWPCA also defines "final compensation" to be "wages, salaries, earned commissions, earned bonuses, and the monetary equivalent of earned vacation and earned holidays, and any other compensation owed the employee by the employer pursuant to an employment contract or agreement between the 2 parties."

44. Pursuant to the IWPCA, 820 ILCS 115/3, "[e]very employer shall be required, at least semi-monthly, to pay every employee all wages earned during the semi-monthly pay period. Wages of executive, administrative and professional employees, as defined in the Federal Fair Labor Standards Act of 1939, may be paid once a month." Additionally, under 820 ILCS 115/4, "[a]ll wages earned by any employee during a semi-monthly or bi-weekly pay period shall be paid to such employee not later than 13 days after the end of the pay period in which such wages were earned."

45. The IWPCA, 820 ILCA 115/5, further requires that employers pay the final compensation of separated employees in full, at the time of separation, if possible, but in no case later than the next regularly scheduled payday for such employee.

46. In violation of the IWPCA, Defendants failed to pay Plaintiff his "wages" and "final compensation." By the conduct as alleged herein, Defendants knowingly and willfully violated the IWPCA.

## COUNT IV

### BREACH OF CONTRACT

**Plaintiff v. Quaker Funds, Inc.**

47. Plaintiff realleges paragraphs 1 through 46 and incorporates them by reference into Count IV of this Complaint.

48. Plaintiff and Quaker entered into an Agreement which governed the compensation

that Plaintiff would receive in exchange for work performed for Quaker. See <u>Exhibit A</u>.

49. In March 2016, Quaker and Plaintiff agreed to modify the Agreement with respect to Plaintiff's compensation. The promises made to Plaintiff by Quaker were clear and unambiguous.

50. In reliance on the offers made to him by Quaker, Plaintiff performed under the terms of the contract.

51. Quaker breached the contract by engaging in the conduct described herein.

52. Defendant's breach of the express contract caused Plaintiff substantial damages.

<b><u>PRAYER FOR RELIEF</u></b>

**WHEREFORE**, Plaintiff respectfully requests that this Court find in his favor and against the Defendants as follows:

 a. Declare that the acts and conduct of Defendants violate the FLSA, IMWL, IWPCA and Illinois common law;

 b. Award Plaintiff the value of all compensation and benefits lost as a result of Defendants' unlawful conduct;

 c. Award Plaintiffs the value of all compensation and benefits he will lose in the future as a result of Defendants' unlawful conduct;

 d. Award Plaintiff liquidated damages;

 e. Award Plaintiff penalties under Illinois law;

 f. Award Plaintiff prejudgment interest;

 g. Award Plaintiff reasonable attorneys' fees, costs and disbursements; and

 h. Award Plaintiff such other relief as this Court deems just and proper.

## **DEMAND FOR TRIAL BY JURY**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all questions of fact raised by the Complaint.

Dated: November 20, 2017

                                      Respectfully submitted,

                                      By:  */s/Jill Weinstein*

Erika Pedersen
Jill Weinstein
**PEDERSEN & WEINSTEIN LLP**
33 N. Dearborn Street
Suite 1170
Chicago, IL  60602
(312) 322-0710
(312) 322-0717 (facsimile)